# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

№. _____

_____

Rhonda Aley,
>               *Plaintiff-Respondent,*

v.

Lightfire Partners, LLC
>               *Defendant-Petitioner.*

_____

Response In Opposition to Rule 23(f) Motion for Leave To Appeal from
Memorandum Opinion and Order Granting Motion for
Class Certification in 5:22-cv-00330-AMN-TWD in the
United States District Court for the Norther District of New York.
Honorable Anne M. Nardacci

_____

**RESPONSE IN OPPOSITION TO PETITIONER'S MOTION**

_____

<div style="margin-left:50%">

s/ ANTHONY PARONICH, ESQ
ANTHONY PARONICH, ESQ.
(Admission Pending)
PARONICH LAW PC
350 Lincoln St #2400
Hingham, MA 02043
anthony@paronichlaw.com
(617) 485-0018
*Counsel for Respondent*

</div>

## Table of Contents

I.   Counter-Statement of Jurisdiction ............................................. 1

II.  Counter-Statement of Issue .................................................... 1

III. Concise Statement of Facts ................................................... 1

IV.  Summary of Argument .................................................... 4

V.   Argument ...................................................................... 7

   A.   Class certification here is in line with the mountain of similarly and routinely certified TCPA class actions. .......................................... 7

   B.   Lightfire failed to make a showing at class certification that individualized consent issues predominated, and does not do so here, because individualized issues do not predominate. .............................. 12

   C.   The District Court appropriately ruled on the feasibility of adjudicating consent issues on a classwide basis, demonstrating that it can identify class members and adjudicate their claims appropriately. ........................................................ 17

VI.  Conclusion .................................................................... 27

VII. Combined Certificates of Compliance and Service ............... 29

## Table of Citations

### Cases

*Aguilar v. Parris*, No. 3:16-CV-00779, 2016 WL 5373532 (M.D. Tenn. Sept. 26, 2016) ...................................................................... 23

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .. 13

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019) ........................................................................ 15, 16, 20

*Bridging Cmtys., Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016) .................................................................... 8, 25

*Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292 (N.D. Ill. 2014). 24

*Chapman v. Wagener Equities, Inc.*, No. 09-c-07299, 2014 WL 540250 (N.D. Ill. 2014) ...................................................................................... 8

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019)................ 10

*Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) .................................... 10

*Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008) ....... 10

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ........ 21

*Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 WL 3812063 (S.D.N.Y. Aug. 14, 2019) ....................................................... 19

*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ................. 8

*Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019) ........... 7

*Mantha v. QuoteWizard.com, LLC*, 2024 WL 3912459 (D. Mass. Aug. 16, 2024)........................................................................................ 15, 20

*Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919 (D. Mass. Dec. 13, 2021)................................................. 11, 13

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ............................... 26

*Meyer v. Uber Technologies, Inc.*, 868 F.3d 66 (2d. Cir. 2017) ............... 24

*Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740 (2012) ........................... 2

*Minns v. Advanced Clinical Emp. Staffing LLC*, No. 13-CV-03249-SI, 2015 WL 3491505 (N.D. Cal. June 2, 2015)......................................... 27

*Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) ................................................... 24

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017) ............................................................... 24, 25

*Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015) ..................................................... 20

iii

*Story v. SEFCU*, No. 118CV764MADDJS, 2021 WL 736962 (N.D.N.Y. Feb. 25, 2021) ........................................................................ 26

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134 (2d Cir. 2001) ............................................................ 4, 8, 9, 11

*Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537 (D. Minn. 2017).... 19

*United States v. Williamson*, No. 8:21-CR-355-WFJ-CPT, 2023 WL 4056324 (M.D. Fla. Feb. 10, 2023) ...................................... 23

*Wakefield v. ViSalus, Inc.*, 51 F.4th 1114 (9th Cir. 2022) ...................... 14

*Williams v. PillPack LLC*, 343 F.R.D. 201 (W.D. Wash. 2022).. 14, 19, 20

## Statutes

47 C.F.R. § 64.1200 ........................................................................ 3

47 U.S.C. § 227 ................................................................ 3, 5, 7, 8

Fᴇᴅ. R. Cɪᴠ. P. 23(f) ............................................................ 1, 4, 7, 8

## Other Authorities

Appendix ("Appx.") ............................................................ 12, 18, 24, 26

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C. Rcd. 1830 (Feb. 15, 2012) .............. 13

Petition ("Pet.") ............................................................ 7, 9, 12, 16, 20, 22

iv

## I. COUNTER-STATEMENT OF JURISDICTION

Defendant-Petitioner has filed a motion/petition for leave to appeal, under FED. R. CIV. P. 23(f), from a Memorandum Opinion and Order granting the Plaintiff-Respondent's motion for class certification in this action.

## II. COUNTER-STATEMENT OF ISSUE

This appeal arises from the District Court's order granting Plaintiff's motion for class certification. The question presented is as follows:

**Issue 1:**

Did the District Court abuse its discretion in granting the motion and holding that uniform legal and factual issues predominated over individualized ones, thus requiring this Court to grant a petition for interlocutory review?

*Suggested answer:* No.

## III. CONCISE STATEMENT OF FACTS

The District Court's order sets forth the relevant facts concisely in its Certification Order. The Plaintiff, Rhonda Aley, is a consumer who

received telemarketing calls from Defendant Lightfire to solicit her to purchase automobile insurance. These calls were made as part of a telemarketing campaign called "Auto Protectors," and the telephone numbers for that campaign were obtained from a third-party company, Connexus Digital. Defendant Lightfire obtained the numbers from Connexus and then dialed them using its own manpower.

Congress enacted the TCPA more than twenty years ago to regulate the explosive growth of telemarketing, which it recognized as a nuisance and an intrusive invasion of privacy. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Among other things, the TCPA and its accompanying regulations prohibit sellers like Lightfire from making telephone solicitations to people who have listed their telephone numbers on the National Do Not Call Registry.

In turn, Connexus Digital claimed that it obtained the telephone numbers it sold to Lightfire, including Ms. Aley's number, from a website that it operated called MyJobsCorner. It contended that visitors to the MyJobsCorner website, a website purportedly containing job offers but also which obtained purported visitors' personal information for marketing purposes, purportedly checked a box signifying consent to

2

the website's terms and conditions, thereby providing their consent for Lightfire to call them.

A telemarketer is prohibited from calling a DNC registrant unless that registrant consents to receive the calls in a signed, written agreement that meets applicable legal requirements. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2)(ii). At class certification, the Plaintiff pointed out, and the District Court appropriately found, problems with Lightfire's theory of the case with respect to Lightfire's affirmative defense of consent. Plaintiff Aley never visited the MyJobsCorner website and submitted a sworn statement to that effect. In light of this declaration, as well as the Plaintiff's challenges to the legal sufficiency and language of the consent disclosure on the MyJobsCorner website, the Court appropriately found that uniform issues with the website's consent language were appropriately analyzed on a classwide basis.

In so holding, the District Court held that class certification requires only a showing that the Plaintiff has established the essential elements of the cause of action; class certification does not require the plaintiff to *disprove* the defendant's affirmative defenses on a factual level. The District Court held issues of the legal sufficiency of the

3

consent procedures on the MyJobsCorner website were capable of classwide proof and were more substantial than any individualized questions.

Noting that this was a textbook case under the TCPA's Do Not Call Registry provisions of the type that courts nationwide routinely certify, the District Court appropriately granted class certification.

## IV.  SUMMARY OF ARGUMENT

This Court should not grant *allocatur* in this Rule 23(f) review because Defendant-Petitioner Lightfire Partners, LLC ("Lightfire" or "Petitioner") falls far short of demonstrating "a likelihood of succeeding on the merits of an appeal", particularly under the applicable abuse of discretion standard of review. *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001). Lightfire's petition misstates the applicable law and standard applied by Judge Nardacci in certifying this case. Lightfire's lead argument that the class fails on predominance based on purportedly individualized issues of consent is untethered to the uniform legal reality of the deficient consent language on the website.

The District Court appropriately held that the affirmative defense

4

of consent was capable of classwide evaluation and resolution for two reasons in line with existing case law. *First*, all the purported consent in this case suffers from uniform legal issues which will be evaluated on a classwide basis to determine if legally sufficient consent was obtained. *Second*, it determined that even *if* legally sufficient consent was obtained, the *factual* issue of whether or not any class member actually visited the website, as opposed to a bot, was also capable of classwide resolution because the consent all appears to originate from a callback proxy network, and thus bears indicia of being fraudulently obtained.

Lightfire's misstatement of the law of consent applicable in cases alleging violations of the Do Not Call ("DNC") provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5) ("TCPA") is glaring, dismissing well-established precedent that establishes the legal requirements for such consent. Lightfire also downplays the significance of the Plaintiff's contention that she never visited the website to provide her consent and other objective evidence showing that consent was not obtained from real human visitors.

At the District Court, Lightfire made no showing as to why either of these two ways of showing the absence of consent necessitated

5

individualized analysis or why they were incapable of classwide resolution. It fails here too. Lightfire also doesn't explain why the consent was legally sufficient or why a showing either way isn't possible for the class. The District Court appropriately concluded that both legal and factual individualized issues of consent did not predominate over classwide ones.

The District Court appropriately evaluated both predominance and typicality and determined, in its sound discretion, that classwide issues predominated. Lightfire's argument that the District Court acted inappropriately rests at times on various incoherent conflations of distinct legal issues and standards that the District Court supposedly failed to appropriately apply. Lightfire speaks in generalities about the merits of its affirmative defense instead of pointing to cognizable reasons for why determination of those arguments is not susceptible to classwide resolution.

As a result, Defendant can point to no abuse of discretion warranting the exceptional remedy of this Court's discretionary allowance of an appeal.

## V. ARGUMENT

A. *Class certification here is in line with the mountain of similarly and routinely certified TCPA class actions.*

Lightfire's contention, without citation, in its petition that orders granting class certification in TCPA cases such as this are "almost without exception, denied" is shockingly false. (Pet. at p. 4). To the contrary, certification of TCPA class actions are routine, and it is the rare exception that a TCPA class action is not certified. Failures to certify TCPA class actions are the rare exception, not the rule. As the Fourth Circuit has observed in *affirming* a class action judgment in another TCPA case:

> The private right of action in § 227(c)(5) offers many advantages for class-wide adjudication. It requires a plaintiff to initially show two things: a number on the Do-Not-Call registry, and two calls made to that number in a year. . . .The problems that so often plague class actions under Rule 23(b)(3) are wholly absent from this scheme.

*Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 655 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019).

The Fourth Circuit is not alone in these sentiments. Multiple courts have remarked on the appropriateness of class certification in TCPA actions. *See, e.g., Bridging Cmtys., Inc. v. Top Flite Fin. Inc.*, 843

7

F.3d 1119, 1124 (6th Cir. 2016) (reversing denial of class certification on predominance grounds); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal under § 227, because the main questions . . . are common to all recipients."); *see also Chapman v. Wagener Equities, Inc.*, No. 09-c-07299, 2014 WL 540250, at *15, n. 11 (N.D. Ill. 2014), *leave to appeal denied* 747 F.3d 489 (7th Cir. 2014) (discussing "the many cases decided during and since 2011 in which TCPA classes have been certified," as well as the Seventh Circuit's observation in *Turza* that "class certification is the norm in TCPA cases").

Lightfire has made no showing that it meets either of the *Sumitomo* factors this Circuit has held are required in order to authorize an appeal under Rule 23(f). *Sumitomo*, 262 F.3d at 139. The factors this Court articulated in *Sumitomo* reflected an intent that 23(f) petitions should only be granted when there is some indication that the district court abused its discretion. *Id.* Lightfire can point to neither factor or any evidence that the District Court abused its discretion.

Lightfire makes arguments about its ability to pay any judgment in this case and makes tenuous characterizations of this case's ramifications "for participants in the telemarketing and telemarketing lead generation service industries." (Pet. at p. 5). But similar legal issues of consent and their impact on predominance have already been decided by numerous circuit and district courts; the District Court's analysis on the predominance of the legal sufficiency of a website's consent language is hardly a "novel legal question … likely to escape effective review," let alone one on which the District Court's grounds were "questionable." *Sumitomo*, 262 F.3d at 139–40. Perplexingly, apart from citing to two denied TCPA class actions, Lightfire makes no further attempt to evaluate the *Sumitomo* factors or distinguish the cases Plaintiff relies on. That alone dooms Lightfire's petition on a standard that will already "rarely be met." *Id.*

Nevertheless, the cases cited by Lightfire in support of its contention that class certification is inappropriate as a general matter in TCPA cases are distinguishable. In *BioPay*, the Fifth Circuit reversed class certification when individualized issues of consent predominated over classwide issues, thus necessitating individual

9

mini-trials. *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 323 (5th Cir. 2008). There, although BioPay had purchased databases of fax numbers it contacted without consent, the database of individuals faxed also contained lists culled "from other sources," including from BioPay's website and trade shows it attended. *Id.* There, it was impossible to determine which individuals were contacted without consent and therefore unlawfully. *Id.* The facts of *BioPay* stand in crisp contrast to the facts here, where Lightfire obtained purported consent from a singular source: the MyJobsCorner website, which did not obtain legally sufficient consent under the TCPA and case law. Moreover, the Plaintiff here further limits the data to a singular calling campaign that Lightfire conducted, the "Auto Protectors" campaign.

So too with *Cordoba*. There, the Eleventh Circuit reversed class certification because the district court undertook a deficient analysis of standing issues, not consent. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019). The Court later reversed its standing holding in *Cordoba*. *Drazen v. Pinto*, 74 F.4th 1336, 1344 (11th Cir. 2023). There are no standing issues here. The Plaintiff seeks to certify

10

a class of individuals on the Do Not Call Registry who were nevertheless called without consent.

The articulated *Sumitomo* factors also do not help Lightfire. The district court's decision is not questionable; it is in line with established TCPA-specific case law and certified classes addressing uniform issues of consent. The certification order will also not effectively terminate the litigation. As the District Court noted in its opinion, Lightfire is free to argue for the legal sufficiency of the consent obtained from MyJobsCorner and plead its affirmative defense.

Nor is there a "compelling need for immediate resolution" of whether granting class certification is appropriate when uniform legal issues predominate. Courts agree that class certification is appropriate when there are uniform factual or legal issues with the consent evidence. At least one district court has already certified a class based on identical, if not less uniform, facts than here, thereby demonstrating that there exists no legal question necessitating a compelling need for immediate resolution. *Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021).

B.   *Lightfire failed to make a showing at class certification that individualized consent issues predominated, and does not do so here, because individualized issues do not predominate.*

Lightfire's claims that the District Court abused its discretion in determining that individualized issues of consent did not predominate over ones common to the class ring hollow. In addressing the argument, the District Court noted that it was:

> unconvinced by Defendant's argument on the merits of the affirmative defense, and thus, finds that it is a live, common issue which overwhelms the individual issues of whether the Proposed Class Members visited Myjobscorner.com. Defendant acknowledges it is simply their "understanding" that the consent provided for on Myjobscorner.com meets the statutory requirements for an electronic signature under the Electronic Signatures in Global and National Commerce Act. Moreover, Defendant merely alludes to the sufficiency of "clickwrap agreements" and finds comparison to Plaintiff Aley's cases "lacks credibility" without engaging in the fact-intensive analysis required.

(Appx. A-238.)

In contending that it obtained legally sufficient consent here, Lightfire does little more than what it did at the District Court, parroting TCPA case law standing for the proposition that calls placed with prior express written consent do not violate the TCPA and that written consent can be obtained through an intermediary, like a website. (Pet. at p. 6–7 (citing cases)). But those cases all require

12

*legally sufficient* consent to be obtained as an *initial matter*. Legally insufficient consent is not consent. And, as the Plaintiff made clear at the District Court, the Plaintiff intends to argue, on a classwide basis, that the obtained consent is legally insufficient because it did not meet the E-SIGN Act's requirements. *Mantha*, 2021 WL 6061919, at *8.

Besides the E-SIGN Act, other uniform legal issues exist. The putative consent was also deficient because the consent did not name Lightfire and was also misleading that it was obtained for marketing. It is axiomatic that consent under the TCPA must be "clear and conspicuous." A marketing website masquerading as a jobs website is anything but. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print."); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).

Moreover, the website failed to name Lightfire, let alone as a specific seller, which is also required. *Id.* at 1843–44 (Feb. 15, 2012);

*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1114 n.2 (9th Cir. 2022), cert. denied, 143 S. Ct. 1756, 215 L. Ed. 2d 653 (2023) (affirming class certification and holding that consent under the TCPA must name a "specific seller").

These questions do not require individualized inquiry. *Williams v. PillPack LLC*, 343 F.R.D. 201, 209 (W.D. Wash. 2022). The District Court was correct in holding that predominance was satisfied. If each class member was shown the same legally deficient consent language, no class member consented. That legal issue is resolvable on a classwide basis, because there's no dispute all class members were shown the same language. Lightfire points to no reason for why the District Court's analysis in this regard was incorrect, let alone why it constituted an abuse of discretion. Lightfire seems to conflate the District Court's analysis of the uniform legal issues and lump them in with the District Court's analysis of the uniform factual issues, but even those are capable of classwide resolution.

Even so, Lightfire mistakes the predominance prong of the certification analysis in arguing that the consent it obtained was legally sufficient. A plaintiff seeking class certification need not make a

14

showing that he will *prevail* on an issue. Lightfire faces an uphill battle of being able to prove its affirmative defense as this case proceeds. However, losing on the meris is different than the merits being an individualized inquiry. Rather than challenging the District Court's analysis of whether the case can be tried as a matter of class-wide proof, Lightfire asks this Court to adopt a defendant-favored view of "evidence" that has no support in the record or the law.

This case is remarkably uniform, with the purported consent evidence all originating from a singular source–the MyJobsCorner website. It is undisputed that each purported visitor to the website was presented with the same flow and same (legally deficient) consent language. Courts routinely certify TPCA class actions containing far less uniform facts than here. *Mantha*, 2024 WL 3912459, at *12 (D. Mass. Aug. 16, 2024) (certifying class with over 66,000 members and with disputed consent evidence); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 977 (N.D. Cal. 2019) (over 149,000 members and with disputed consent evidence).

Lightfire's claims that the District Court violated due process in somehow creating an "inchoate 'disclaimer' class" makes little sense.

(Pet. at p. 14). The Court acted appropriately when it considered whether Lightfire's proffered defense was capable of classwide resolution. Without adjudicating the *merits* of these claims, the District Court held that *adjudicating* them as potential claims and defenses was *feasible* on a classwide basis. That the District Court may eventually deny summary judgment on this defense does not mean that it cannot do so on a classwide basis. Lightfire seems to want this Court to hold that the District Court erred by not putting the cart before the horse and ruling on the affirmative defense of consent.

That the Defendant may not prevail on proving an affirmative defense is no reason that the District Court acted appropriately in determining that a question was susceptible to classwide proof. Courts routinely certify TCPA class actions where consent was obtained through *multiple* sources, sometimes from different companies entirely, but with similar legal issues. *Berman*, 400 F. Supp. 3d at 973 (discussing multiple user "flows"). If *those* cases, with far more disparate data than here, nevertheless satisfied predominance, than surely the case here, with a singular set of records and relatively meager dataset, satisfies predominance.

16

The question before this Court is if the Plaintiff has adequately pled the existence of common, typical issues allowing the Court to adjudicate the affirmative defense of consent. Plaintiff has, because she has alleged that the evidence is legally and factually deficient, including because uniform evidence will show that no class member visited the website. Answering those questions can be done on a classwide basis, and Lightfire has failed to show otherwise.

C. *The District Court appropriately ruled on the feasibility of adjudicating consent issues on a classwide basis, demonstrating that it can identify class members and adjudicate their claims appropriately.*

Lightfire faults the Court for not undertaking an appropriate predominance analysis as it pertains to consent, but advances the ball little for why the District Court's analysis of the consent issue was allegedly inadequate. Lightfire rests on the baseless assertion that the district court did not appropriately consider the consent issues here as capable of classwide adjudication. Not so. The District Court did not "downplay" the issue of consent; on the contrary, it appropriately held that adjudicating that defense was capable of classwide proof.

The District Court appropriately observed that:

17

The sufficiency of the consent procedures used on Myjobscorner.com under the TCPA is an issue for every Proposed Class Member. Should the Court grant certification, and should the Court subsequently rule that the consent procedures were inadequate under the law, such a determination would render moot the individualized assessment of whether individual Proposed Class Members visited Myjobscorner.com.

(A-237.)

As the District Court in *PillPack* remarked, addressing a nearly identical argument:

To determine whether common questions predominate over individual ones, the Court must first begin with the elements of the underlying action. A violation of [the TCPA] requires Williams establish PillPack or its agents made a call without prior express consent. [Common] questions include [w]hether consent to receive calls from third parties suffices as valid consent under the TCPA. PillPack argues individual issues of consent predominate and would not provide a proper basis for class certification. To the extent there are some consumers in the class that did provide prior express consent to be contacted by PillPack, the Court may still exclude these individuals from the class later in this litigation. That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate. [T]he Court [also] rejects PillPack's assertion that whether PillPack is the "seller" for purposes of the TCPA requires individualized inquiry. The Court finds there is common evidence as to the nature of PillPack's control over the campaign and that this evidence has the capacity to generate common answers for the proposed class for purposes of PillPack's consent defense.

*See PillPack*, 343 F.R.D. at 207–210 (cleaned up).

The cases cited by the Defendant on predominance are distinguishable and do not dictate a different result. In *Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445 (JPO), 2019 WL 3812063, at \*10 (S.D.N.Y. Aug. 14, 2019), the court held that whether calls were made to reassigned wrong numbers based on reverse-lookup databases required individualized inquiries of databases with questionable accuracy. Moreover, the consumers in that case did not dispute that individuals provided their consent when they *signed up for accounts* and did not argue that consent was legally insufficient, as here. *Id.* at \*14. Here, class membership has already been ascertained through reference to Lightfire's own records, including what the Plaintiff contends is legally insufficient consent evidence as to all class members.

And neither with *Ung* nor *Shamblin*. In the former case, on similar facts to *Hunter*, there was evidence that some class members legitimately and validly provided their consent to a debt collector to call them, and no argument was made that the consent was legally deficient, as here. *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017). And in the latter case, defendant lawfully obtained

19

valid consent "in a multitude of ways," including through website signups, signups at events, and door to door signups. *Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1909765, at *11 (M.D. Fla. Apr. 27, 2015). There, unlike here, the plaintiff attempted to disprove consent not on legal grounds but on the basis of a survey of call recipients and other methods requiring individualized proofs. *Id.* at *6, *11–12. The remainder of the cases scattered throughout Lightfire's briefing on the issue similarly dealt with problems not present here, where uniform legal and factual issues predominate.

Lightfire seems to imagine a world where, as a general rule, no court can ever certify a TCPA class action where there exists some evidence of consent. That's not the law. Courts routinely certify classes where there exist consent issues, but where those issues are capable of classwide resolution because of uniform legal or factual issues. *PillPack*, 343 F.R.D. at 207; *Mantha*, 2024 WL 3912459 at *12; *Berman*, 400 F. Supp. 3d at 973. Even the factual issues here are capable of classwide resolution and would not necessitate a mini-trial for each telephone number and consent record. (See Pet. at p. 11–12).

The District Court's analysis of the consent issue itself accurately

20

restated the law on this point, demonstrating that it did not abuse its discretion in holding that it was able to make classwide evaluations of the consent evidence based on the language of the consent provision and, if it came to that point, allowing members to disprove their visits to the website (such as through reference to a database of proxies). Because that holding was well in line with established TCPA case law in cases where there are uniform legal and factual issues concerning consent evidence, this Court should not grant the petition.

To be sure, Lightfire has also contended that the Plaintiff visited the MyJobsCorner website and provided her information, and has submitted an IP address to evidence that contention. Nevertheless, the District Court also appropriately addressed why these factual issues were not individualized and did not preclude class certification. A court is not required to consider every procedural contingency in granting certification. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014). ("That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate."). But even an unlikely holding that the consent was legally adequate does not

21

preclude classwide adjudication of the factual issues surrounding consent, as Lightfire unjustifiably claims. (*See* Pet. at p. 11–12).

As discussed, the District Court analyzed how the legal issues in this case were capable of classwide resolution. If the District Court agrees that the consent was inadequate as a matter of law, that is the end of the analysis. But even if Lightfire were to prevail here, the factual issues, though disputed, are nevertheless also capable of classwide proof.

 For her part, the Plaintiff denies ever having visited the website. Like in other certified cases where the factual basis for consent is disputed, the Plaintiff pointed to smoking-gun evidence at the District Court to show that all the telephone numbers obtained through the MyJobsCorner website were not obtained by human visits but instead through automated means. Just as Plaintiff herself declared, no human class member ever submitted their information to the website. Automated website visits are easily differentiated from human ones and bear common indicia making them suitable for classwide resolution. Plaintiff's theory is that the MyJobsCorner website is an automated scheme to generate leads. Uniform evidence will prove it.

22

For example, the Plaintiff noted in her motion that the IP address associated with the Plaintiff's purported submission links back to a residential callback proxy network. This is strong evidence that the Plaintiff's visit did not occur and was rather procured through automated means. The District Court will not need to take each class member's say-so that they did not visit the MyJobsCorner website; the fact that an IP address is associated with a proxy network is easily ascertainable through reliable commercial databases, including those used by the federal government. *See Aguilar v. Parris*, No. 3:16-CV-00779, 2016 WL 5373532, at *11 (M.D. Tenn. Sept. 26, 2016) (FBI's use of Maxmind IP database); *United States v. Williamson*, No. 8:21-CR-355-WFJ-CPT, 2023 WL 4056324, at *4 (M.D. Fla. Feb. 10, 2023) (using IP address databases to process child abuse reports and forward them to authorities).

It follows that if all the MyJobsCorner submissions originated from proxies or bear other evidence of bot or automated activity, no factual divide would exist as among class members that the visits were not legitimate, rendering this issue also capable of classwide resolution. Such a finding would also appropriately credit the

23

Plaintiff's (and other class members') sworn statements that they did not visit the MyJobsCorner website.

The District Court appropriately addressed these realities and noted that Defendant made no arguments at class certification for why the consent obtained was legitimate, let alone engage in the "fact-intensive analysis required." (A-238.) (citing *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 78 (2d. Cir. 2017)). And Courts routinely certify classes when class membership is determinable through objective criteria, like a database. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (skip-tracing database); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973, at *5 (W.D. Wash. Oct. 13, 2023) (certifying reassigned number class based on reassigned number database).

This case is also unlike *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), where the Sixth Circuit affirmed denial of class certification because individualized issues of consent defeated predominance. There, defendant produced documents demonstrating that "several thousand" individuals consented and were current customers. *Id.* This was a

24

"sufficiently individualized" inquiry that precluded class certification. *Id.* By contrast, it is disputed whether the entirety of the class membership identified here consented. And even if they provided legally sufficient consent, uniform evidentiary issues will show that human beings did not consent.

This case is more like *Top Flite*, 843 F.3d at 1124, where the Sixth Circuit held that the district court erred in holding that individualized consent issues predominated. There, the defendant purchased a list of customers from a third party, just like Lightfire, and faxed them, mistakenly thinking consent was obtained. *Id.* at 1122. The factual issues here are remarkably similar. There, plaintiffs "presented evidence suggesting a class-wide absence of consent— evidence that B2B failed to contact anyone on the list it purchased to verify consent prior to faxing them advertisements." *Id.* at 1125. On those facts, the lack of consent was subject to "generalized proof, and thus applicable to the class as a whole." *Id.* at 1124.

And, having established that the District Court appropriately analyzed predominance, the District Court necessarily appropriately analyzed typicality. *Story v. SEFCU*, No. 118CV764MADDJS, 2021 WL

25

736962, at *5 (N.D.N.Y. Feb. 25, 2021) (merging typicality analysis into predominance). The burden for demonstrating typicality is lower than that of predominance and merely requires that the claims of the class representatives be typical of the claims of the class. *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).

The District Court did not err in holding that this TCPA class action exhibited textbook typicality. (A-232–A-233.) The named Plaintiff, like all other putative plaintiffs, received calls from Lightfire as part of the "Auto Protectors" campaign. Lightfire obtained the numbers for that campaign from the MyJobsCorner website. And the Plaintiff contends that all class members, like her, did not visit the MyJobsCorner website as an initial matter and would have been shown legally deficient disclaimers regardless. And the District Court appropriately identified at least three reasons why the Plaintiff's denial of having visited the website did not defeat typicality: first, other class members likely did not, either; second, that issue is relevant to an affirmative defense, not the elements of the Plaintiff's claims; and finally, typicality is a low, flexible bar. For much the same

26

reasons as in analyzing predominance, the District Court appropriately analyzed typicality.

Common issues will predominate if "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim." *Minns v. Advanced Clinical Emp. Staffing LLC*, No. 13-CV-03249-SI, 2015 WL 3491505, at *8 (N.D. Cal. June 2, 2015). Thus, even the fact-specific issue of whether class members visited the MyJobsCorner website as an initial matter remains capable of classwide resolution. Determining whether each class member visited the website, or if the website visits instead resulted from fraudulent lead generation traffic, such as automated bot traffic, is easily ascertained through public databases. This issue is also therefore eminently capable of classwide determination and resolution, and the District Court did not abuse its discretion in holding the same.

## VI.   CONCLUSION

For the foregoing reasons, the petition should be denied. Where, as here, the petitioner has presented no serious legal issues worthy of

this Court's discretionary review, the better course is to await an appeal

from a final judgment in the case.

Dated: September 23, 2024

s/ ANTHONY PARONICH, ESQ
ANTHONY PARONICH, ESQ.
(Admission Pending)
PARONICH LAW PC
350 Lincoln St #2400
Hingham, MA 02043
anthony@paronichlaw.com
(617) 485-0018
*Counsel for Respondent*

### VII. COMBINED CERTIFICATES OF COMPLIANCE AND SERVICE

1.      I Certify that I am counsel for the Respondent in the above-captioned matter and my admission to the United States Court of Appeals for the Second Circuit is pending.

2.      This brief complies with the type-volume limitations imposed by Federal Rule of Appellate Procedure 27(d)(2)(A). It contains 5,179 words, excluding the parts of the brief exempted by Rule 27(a)(2)(B).

3.      This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6). It has been prepared in a proportionally-spaced typeface using Word in 14-point Century Schoolbook font.

4.      I certify that I filed the foregoing Response of Respondent via the email address designated for receipt of the same, I personally mailed the required hard copies of the foregoing to the Clerk of the United States Court of Appeals for the Second Circuit, and emailed a copy of the foregoing Brief of Appellee via email to:

jfitzpatrick@cunninghamdalman.com

newcases@ca2.uscourts.gov

Dated: September 23, 2024

s/ ANTHONY PARONICH, ESQ
ANTHONY PARONICH, ESQ.
(Admission Pending)
PARONICH LAW PC
350 Lincoln St #2400
Hingham, MA 02043
anthony@paronichlaw.com
(617) 485-0018
*Counsel for Respondent*